The next case on the call of the docket is Agenda No. 2, Case No. 125550, People of the State of Illinois v. John T. McCavitt, Mr. Elidadz v. Molyneux. Please proceed. Elidadz Good morning, Your Honors, and may it please the Court. I am Assistant Attorney General Eldad Malamuth here today on behalf of the People of the State of Illinois. This Court should reverse the appellate courts where the majority determined that the trial judge should have granted defendants' motion to suppress the evidence of child pornography found on his computer hard drive. But contrary to the appellate court's determination, there was no Fourth Amendment violation here. Instead, the officers obtained multiple warrants with respect to the computer, and at no stage in the investigation, which evolved to include a number of possible offenses, did the officers open any file that they had not been authorized to do so by a then-existing warrant. Thus, there was no Fourth Amendment violation because the officers merely did what they were authorized to do by the warrant. Sotomayor Was this a different police agency that made the search that found the pornography? Elidadz That's right, Your Honor. It's a different agency that conducted the, in this case, the second search. Sotomayor Is that any different? Elidadz No, Your Honor. That makes no difference at all. This Court has so held, in the Richards case, where it was a different police department that had conducted an original search, and then a different police department conducted the second search. And that, indeed, has been held to be the case in Federal courts as well, as we set forth in our brief. Sotomayor What effect, if any, does his acquittal have on the police officer's right to search his property? Elidadz Well, Your Honor, I would try to answer your question in a couple parts. So first, one thing to make clear here is that the defendant was acquitted on the criminal sexual assault charges, but he had not been convicted – he had not been acquitted of the unauthorized video recording charges. Indeed, he had not officially been charged yet, although he would be and would be convicted. Sotomayor My only question is, once he was acquitted, did he have a right to the return of his property? Elidadz Your Honor, the answer to that, as a constitutional matter, is no. There is no Fourth Amendment right to the immediate return of property that was seized pursuant to a search warrant. That does not mean – I'm sorry, I don't mean to interrupt, if Your Honor has a moment. That does not mean that the criminal defendant does not have means of regaining his property. He can, pursuant to State legislation, file a motion for the return of the property. But, as noted first, that would not be a constitutional matter, but a matter of State legislative law. And in this particular case, the defendant did not file any such motion in any – in a fashion, in a manner within a time frame that would have impacted the investigation here. Sotomayor Just so I'm clear, you're saying he was not entitled to the return of his property until he filed a motion. Elidadz I'm just making sure I'm not misconstruing Your Honor's use of the word entitled there. He certainly could file the motion, and that would then be litigated, and he might be entitled to it based on that motion. But the officers did – had no immediate – there was no immediate requirement for the return of such property immediately upon – immediately upon his acquittal. And – Kennedy What's the timeline for that? Elidadz So, Your Honor – Kennedy If someone's acquitted and there's a property that the acquitted defendant has – had, and now the State has, how long does the State have to return it, never unless there's a request? Elidadz Well, Your Honor, it's certainly true that Kennedy A year, how long? Elidadz Well, it's certainly true that the State does not automatically return all property seized pursuant to a warrant. That's – that's certainly the case. In this case, there were a number of articles that were seized. You know, there were restraints. There was a hidden video recording system. There was lubricant. The State does not automatically return all items seized pursuant to a warrant upon the acquittal. So, in that sense, there's – there's no time frame by which all materials must be returned. But the – Kennedy Well, what – what elements were contraband of a seized material that was returned? Elidadz Well, first of all, Your Honor, it's – again, it's not the case that they have to return all property that's not contraband automatically. So, for instance, the – the restraints, the lubricant here might not have been contraband in some sense, but it might never have been returned. It might still be sitting in a court lockup or disposed of. Kennedy And what was the justification for that? Elidadz Well, Your Honor, the – the evidence that is returned is the evidence that is requested to be returned by the – by the defendant. Now, so the defendant can – once the – under the statute, once the items are seized, then an inventory – an inventory of the items is provided to the court pending the further proceedings. Then the circuit court can enter an order with respect to the disposition of those items pending proceedings. And once the proceedings are over, perhaps if there is a request to return items during the proceedings, the defendant could make a motion asking for the return of some of those seized items, even though his trial might not have been completed yet. And then upon the termination of the proceedings and the acquittal in this case, the defendant can file a motion asking for a return of the property that he or she wants returned. Scalia Did he make a motion at the conclusion of the trial for the return of his property? Elidadz In this case, Your Honor, the defendant made an oral motion for the return of property naming specifically collector firearms. The circuit court asked for a return of – for a written motion. That written motion, too, described – the only thing it described with specificity was the collector firearms. And the – then there was subsequently a hearing, at which point the court granted the motion for the return of those firearms. And the timing of this is also notable in that the defendant was acquitted on the criminal sexual assault charges on March 19th. The police department immediately began the next day, renewed its investigation, and by the time the – and then the day after that, the security department secured a copy of the, on case, mirrored image of the hard drive. And then by the time that – the day that the defendant filed his written motion, by that – by that day, the police had already discovered the child pornography – two images of child pornography. And at that point, they ceased looking for more child pornography, and they came back to this – they came back, went back, and obtained a new warrant to search the, on case file, the copy of the hard drive for more evidence of the child pornography. Once the defendant made the overall motion, that didn't stay all proceedings? It stayed the police from taking any further action with respect to his property? Well, no, Your Honor, for a couple of reasons. First of all, again, there was the original – the July 24, 2013 warrant was not limited to the criminal sexual assault charge, but included the unauthorized video recording crime, that offense. And that a crime – that was a crime which was the subject of the investigation, as well as the criminal sexual assault. So the officers were continuing to search with respect to their formal investigation, pursuant to which there could have been a – pursuant to which there could have been some sort of employment action against the defendants. But it certainly did not stay the investigation into the separate incidents. And these are findings that the circuit court affirmatively made. So the trial court made the factual finding that the – that the search conducted was within the scope of the July 2013 warrants. Does it make a difference that the focus of the review of the content of the computer was not an investigation of a crime, but rather an internal affairs investigation as the employer reviewing the conduct of an employee? Does that make any difference? Well, first of all, Your Honor, I point out that there are parallel proceedings here. So that the officers knew that there were these additional videos of – for the unauthorized video recording. They already knew that they were there. And so they were conducting both a formal investigation, as it's known under the law, and there was also a parallel criminal investigation pursuant to the warrants. But it would make no difference. Maybe I missed something. I thought there was a testimony from Feenan, maybe? A detective from the Peoria Police Department who said he was conducting an internal investigation, internal affairs investigation of a police officer who was employed by his department. Is that what the testimony was? Is there also testimony that there was additional police activity by the Peoria Police Department against his own employee? Officer Feenan, I believe that's the way his name is pronounced, testified that he had been directed to investigate – to open a formal investigation into the defendant. And that included the criminal sexual assault. But he also testified that he was aware of these unauthorized video recording charges, and the videos specifically, that would form the basis of these charges. Those were both part of the formal investigation, which could be conducted pursuant to the warrant. And – but additionally, he was aware that they would be – that they could lead to a – more criminal charges. And so there was a dual purpose. And if you – and this testimony reflects that. He multiple times refers to the parallel investigations that were proceeding. But in any event, the scope of the original warrant here, even if it had just been the formal investigation, that still would have permitted the officers to open the files, because that was – they were authorized to do so by the original search warrant. So they didn't search – they didn't open up any files that they weren't authorized to open. And – During the initial investigation, they didn't find those things. During the initial investigation, they did the second subsequent investigation where they discovered those items. During the initial investigation, we know that they saw the videos of the – at least one unidentified woman who appeared to have been recorded without her knowledge showering and in the bathroom. So we know that they saw one of those videos. We have no evidence that they saw any other videos or any other – or any of the child pornography that they later found. So – so wait a minute. They – this warrant, while they were investigating a claim of aggravated criminal sexual assault, they took his computer and they didn't find all of this material on his computer. They prosecuted him, even though they didn't discover all of this material that was there. Is that correct? They prosecuted him for criminal sexual assault. And meanwhile, due to a collective bargaining agreement and the – an arbitrator's ruling with respect to how that bargaining agreement operated, they stopped all of their further investigation into everything else. And that's not a constitutional requirement, but it's apparently how this collective bargaining agreement works. And it's – Do the collective bargaining agreement affect the internal affairs investigation? I believe so, Your Honor, yes. They were not allowed to proceed with that investigation pending while the criminal charges were pending. And that's exactly the – I think it raises a very useful point, which is that normally what would happen is the officers would have just kept investigating. They would indeed have looked, continued to look, and the – once they found the video recording, they obtained the additional search warrant to – which specified that they could search for offenses from separate incidents. Well, what if their search warrants allowed them to go into that computer, the devices, and they didn't find anything? That initial seizure allowed them to go through all that stuff. They didn't need initial permission, did they? Well, that's exactly right, Your Honor. In this case, the original search warrant authorized them to open all image files, all digital image files. And that is a – and defendant has never contested the scope of that warrant. And the circuit court explicitly made that finding, that the defendant never contested the scope of that warrant. And so they never – they didn't need any additional search warrants to open up all the files. So they had the authority to go through everything. They didn't discover anything. And so then after the acquittal, they conduct a subsequent investigation. They paused some of their investigation during the criminal sexual assault proceedings, yes, Your Honor. But in this case, the officers didn't need to go back and get a search warrant. But they did. They went back again and again each time that they discovered probable cause to believe that there was a new crime had been committed. The crux here, though, is whether or not Feehan's search, when he saw the initial child pornography, alleged child pornography, whether that was within the scope of the original warrant. That's the crux of this case, correct? Because do you agree that the Hughes case from the Michigan Supreme Court was rightly decided? Yeah, the Hughes – so in the Hughes case, the – No, I just wanted to – do you agree that it was rightly decided? Yes, Your Honor. And that basically goes to the scope of the original warrant. If it's within the scope of the original warrant, then it's okay. If it's not within the scope, then it's a violation. That's exactly right, Your Honor. And here it was within the scope of the original warrant. Is there any allegation of the unidentified female who appears to be unrelated to the criminal sexual assault? Well, actually, no, Your Honor, but that makes it even – so the original search warrant authorized them to search open any data file, any image file that was on the computer hard drive. So even under the – even under sort of the simple terms of the warrant, they would have been authorized to open every image file. Every image file had been exposed to police under – Let's assume for a minute that this search warrant application did not contain any allegations about an unidentified woman who was possibly unauthorized, was video recorded without her authorization. If it did not include that, you're saying that this still would have been within the scope of the warrant? The – yes, Your Honor, the scope of the warrant – That had to do only with a criminal sexual assault where he was found not guilty by the time that the officer looked at the warrant? Well, Your Honor, if the sexual – if the criminal sexual assault warrants authorized them to view all the image files, then yes. But we're one step away from even that case, which might be more interesting because of the unlawful video recording charges, which were in addition to the criminal sexual assault charges and had not been – the defendant had not yet been charged of those, but would be and would be convicted. Were those charges brought? Those – yes. So the record doesn't contain the full story, but yes, the charges seem to have been brought and defendant was – so the charges were brought after the – I believe they were brought on April 1st. It could have been March 28th. But after the acquittal, after the criminal sexual assault acquittal, yes. Do you have another question, Justice Breyer? Would you like to finish? Well, I believe my time's up, so unless Your Honor has additional questions, we would ask that this Court reverse the judgment of the appellate court. Thank you. Thank you, counsel. Counsel for the appellate, James Keith Levin. You may proceed.  My name is James Levin. I represent the defendant appellee, Mr. McAvett. And yes, Your Honor, I do agree that the crux of the issue is whether or not the search went beyond the scope of the July 24th warrant. And the Hughes case, the recent Michigan Supreme Court unanimous decision, is very persuasive in this case, which we addressed in the brief. And the reason why it went beyond the scope of the warrant is because the warrant is limited in scope to a specific named person, a.k.a. all the allegations except that last one, the paragraph 16. Every single paragraph related to an allegation of one incident occurring on July 17th as to one particular named individual. So when Detective Feehan testified, he had a hunch that there were other victims, plural, and other crimes occurring on other dates. What he did is he went beyond the scope of the warrant and conducted a search that was unconstitutional because it was not supported by a warrant. So the crux of the issue is the warrant is limited to one individual, and what the police did as Feehan testified is he made a general search, which is the kind of search despised by the framers of our Fourth Amendment, an open-ended, unbridled, unlimited search for evidence of other crimes against other victims, and that was instigated because of Mr. McCavick's acquittal. Well, he didn't search an area of the computer that would have been unauthorized pursuant to this search warrant, though. I mean, the areas of the computer he searched would have been authorized pursuant to this warrant, correct? Well, it was what he did is he went beyond the scope of the warrant in searching for evidence of other crimes. So in that sense, he went beyond the scope because he I'm just talking about the areas in the computer, because sometimes we talk about files in computers and things of that nature. But the areas of the computer that he looked at, you don't have any argument that he went beyond the scope of this warrant as it relates to that particular. That is correct, Your Honor. The argument is directed towards what Feehan said several times. He's looking for other victims, other crimes occurring on other dates. Well, what about the other victim in 16? Well, there's no probable cause in the warrant as to what happened in 16. It's very sketchy. There's no statement about who observed that. There's no statement about whether it was surreptitiously recorded. There's no evidence of a crime in No. 16 at all. And I would note that this is an argument raised for the first time on the reply brief. This was not an argument raised in the original brief. The original brief was that the search was reasonable and permissible because of the balancing test that the State employed as far as they claim that the law enforcement interests were compelling and the defendant's interests were minimal. And so basically they cited cases like the Samson case, several others. The Court can look at the opening brief of the State. All those cases involved decisions of the U.S. Supreme Court where the Court found it to be reasonable, even though there was no warrant. But here, because the police were searching for criminal activity under Riley, the Vernonia School District case, the Carpenter case cited in the defendant's brief, it's very clear under those cases, because the police were searching for evidence of crime, they needed a warrant. So the arguments in the opening brief are rebutted. The argument about the paragraph 16 is an afterthought that the State basically inserted into their reply brief, which I would argue is all mistaken and non-meritorious, but also forfeited because it wasn't raised in the opening brief. So we haven't had a chance to brief it. We're here today addressing an argument the State has raised for the first time in the reply briefing in an oral argument. But I can address that. I mean, there's no probable cause on that very narrow paragraph 16, and there's no other paragraphs at all dealing with this unnamed person. We don't have the name of the person. We don't have any evidence of who interviewed her. We don't have any evidence that there was a crime or even probable cause of a crime. So that paragraph 16 seems like an afterthought that's used to try to support what the allegations as to the one complainant, AK, which is really what the subject of the warrant is. The police went beyond the warrant by searching for multiple victims. And even Fehan didn't testify. He was searching for evidence related to this unidentified female, as he calls it, in the warrant. He was searching. He had a hunch that there were other victims and other crimes. And so what he was doing is operating on a hunch instead of going to a magistrate and taking that hunch to a magistrate and asking the magistrate to find probable cause and to get another warrant. But based on a prior question, if in the initial investigation where they got permission to go through this material, for one victim, as you call it, right, but in that investigation, they're going through all this material and they find other things and other evidence of criminal behavior, that wouldn't have been appropriate, right, if they discovered it with a valid search warrant? If they found something, because they didn't search any. The State hasn't made any argument about that in the briefs. But if they had searched, what really is the determining factor here is the acquittal. And to answer Justice Neville's question, the acquittal had a big impact on this case because with the acquittal, it means that they can't prosecute offenses related to A.K. anymore. So obviously Feehan is engaging a search that really has nothing to do with A.K. anymore. He's in double jeopardy. That's the subsequent. So the subsequent investigation would not have been justified in your mind. Right, because the double jeopardy clause precluded any retrying of the case as to A.K. And so Feehan wasn't searching for evidence relating to A.K. He wasn't searching for evidence related to the warrant. He was searching for evidence based on his hunch there were other victims, other crimes occurring on dates other than July 17th, which is the date of the subject of the warrant, and making an expansive, unlimited, unparticularized general search, which is the type of search that the framers despise. That's the reason why the framers created the Fourth Amendment in the first place, to make sure that kind of thing doesn't happen. And that's why this case presents a very compelling case for the exclusionary rule to apply. I understand that the defendant must prove both an unreasonable search and then that the exclusionary rule should apply. But the exclusionary rule should apply here because we studied several cases in our brief under that section where the police engage in a blanket general search. That's the kind of search where the evidence has to be suppressed under the exclusionary rule. Counsel, what about this argument that was mentioned about the collective bargaining agreement and how there was a pause, there was an investigation going on, but based on agreement, there was a pause until the acquittal. Is that relevant? Well, I think there's some key facts that need to be addressed here. One, this compute — it wasn't just an internal investigation revolving around activities that Mr. McAvity had as a police officer, because what the law enforcement did here is they actually seized his personal computer, not a work computer, but his personal computer, and they seized that personal computer not at work, but at his home. So this involved his personal affairs. And even Feigin testified this was a criminal investigation. He did say that. And it was a criminal investigation. The objective record supports what Feigin said. He was looking for evidence of crime to charge Mr. McAvity. And that's why the scope of this search went beyond the terms of the July 24th warrant. Would it make a difference if the search had been simultaneous? Simultaneous? Simultaneous with the search by the state police of his computer? If Feigin had done it at the same time, because it was a copy, right? This was a copy of a copy? It was a copy, yes. So there were at least two items that contained his computer hard drive, right? So they could have looked at it at the same time. Would there have been a problem? I think I understand Your Honor's question. I think Your Honor is asking what difference would it have made if Feigin conducted the search on July 24th. Right. I think it would have made a difference. So the acquittal is what makes, is the key? The acquittal is the key in what the acquittal means. And not just the acquittal, but how that impacts the scope of the search analysis. Because once the acquittal was rendered, Feigin objectively was not searching for evidence relating to AK anymore, because the state could not charge the defendant with respect to AK anymore under the Double Jeopardy Clause. So the police were searching for additional crimes, additional victims, and on a different date. So they obviously went beyond the scope of the warrant once Feigin decided to try to implicate Mr. McCabe in other crimes after he had been acquitted. The decision was made to do that after he was acquitted. And the acquittal does have a very big impact on the scope of the search analysis. Yes. Your Honor, how do you think a rule should sound when there's a search warrant, an investigation, and then there's an acquittal? What's the rule about taking some of the evidence or looking again at the evidence that you appropriately and properly had? How do we look at the evidence after it was obtained after the acquittal? Well, I would ask the court to suppress that evidence, because I would ask the court to examine the defendant's brief near the very end, where we cited not just one case but several cases that seem to be all in agreement that if the police engage in a general search, that is so offensive to the Fourth Amendment that the evidence should be suppressed. It's something a really well-trained officer would know about. A well-trained officer would know this isn't some issue involving the Fourth Amendment that's difficult to figure out. This is not difficult. This is easy. It's very easy for a well-trained officer to know that the Fourth Amendment despises general warrants and searches that go beyond the scope of the warrant, that warrantless searches just to try to find something that might turn up. So if the incident... You're saying the acquittal nullified all the search warrants which were probably before. Yes, I believe that the officer should have gone ahead and gotten another warrant, because what he was trying to do was look for evidence of other crimes. Obviously, in my judgment and as we expressed in the brief, that kind of activity goes beyond the scope of the warrant, and it's very offensive to the Fourth Amendment. I know the burden is to show unreasonableness because of a lack of a warrant. That's the case. But we have a situation here where this is a very significant, extreme situation where we have an officer who's going ahead and just because they... Instead of deciding to go ahead and go to a magistrate and say, Your Honor, we have... I believe there's evidence of other crimes. Can we please have a warrant to support that search? The police didn't do that. They just felt that he would go ahead and do it on his own and search for evidence of other crimes, which he had no right to do under the Fourth Amendment. He needed to get a warrant. What effect, if any, does this unidentified female who was recorded have on the good faith analysis? It doesn't have any impact, I believe, for several reasons. One reason is Thien didn't even testify that I was looking at Paragraph 16, the unidentified female, and I was looking for evidence relating to that. So Thien cannot rely on good faith because he wasn't conducting the search based on Paragraph 16. He was just looking in general for evidence of other victims and other crimes, multiple, not just the person discussed in Paragraph 16. Plus, I don't think it impacts it for other reasons as well, because the courts throughout the country have been very clear that if the search goes beyond the scope of the warrant, there's a Leon analysis, and I've cited a few cases to support that. It just simply does not apply. The Leon versus United States analysis applies when there's a question as to whether the magistrate who issued the warrant perhaps has made a mistake. This is not what we have here. We have a situation where Thien just decided to, with unbridled discretion on his part, just decided to go beyond the scope of the warrant. So with the cases we cited clearly show that Leon doesn't apply to beyond-the-scope searches. So unless the court has any further questions, I have nothing further. Thank you very much. Thank you, Mr. Novak. Counsel for the appellant, Mr. Malmond.  I'm going to try to touch on two points in my rebuttal. The first is with respect to the scope of the July 24th, 2013 warrant. There's been some back and forth about that, whether that included the authority to search for unauthorized video recording with respect to separate incidents. And I think the best way to dispose of this issue is to look, in fact, at the warrant itself. And I apologize, Your Honors, but I'm going to read just briefly from the warrant itself. That warrant, which is on page 29 of the appendix, the third bullet point in the last examination of, quote, any evidence of the crimes listed below that may be discovered from separate incidents. And one of the crimes listed below is unauthorized video recording. The second matter is found on page 8 of the appendix, and that's the trial court's findings of fact. And in those findings of fact, again, the circuit court found that the July 2013 warrant authorized a search for, quote, any evidence of crimes listed below that may be discovered from separate incidents. So there's really no question, based on the plain language of the warrant and of the circuit court's findings, that the July 2013 warrant did indeed authorize the search for incidents that were separate from this one criminal sexual assault and this one victim. Does the acquittal negate the appropriate warrant? Did you do anything else with that warrant? No, Your Honor. Not at all. We thought there was a warrant to search for crimes of unauthorized video recording from separate incidents, and the acquittal on the separate criminal sexual assault charge had nothing to do with this charge and did not negate that warrant. Is there any time period with regard to warrants? How long is the search for things? Well, Your Honor, generally, of course, warrants must be executed in a certain amount of time, but then the investigation into that evidence can continue for a lengthy period of time. Certainly there's a limitations period under which charges may be brought, but the investigation can continue for a significant time. But here, there's actually no even concern about some extended period of time. Perhaps we could imagine a case where decades later, years and years later, they went back and looked for something. In this case, the officers were extremely diligent. They immediately, upon the acquittal, started the investigation, and they essentially immediately, within days, had found this additional material. And so there's no concern here that there was any kind of delay. The only reason there was even a few-month delay was because of this collective bargaining agreement and how it had been interpreted. And so they paused what they were doing. Would you explain that a little further, this collective bargaining agreement? Your Honor, I apologize. There's not a ton of information about that in the record, but the law, the uniform police disciplinary acts, the uniform peace officers disciplinary acts, has provisions which allow collective bargaining agreements to supersede that statute. And then apparently the way the collective bargaining agreement had been interpreted with respect to the police department in question was that they couldn't continue any sort of formal investigation while the charges were being brought. And so they paused. And then as soon as that was over, they immediately started again. And so they were extremely diligent. There was no kind of... I mean, the collective bargaining agreement put a limit on the initial investigation, ending at the trial, and then they could do everything over again based on the original law. That's how it was interpreted by the officers here and by the, I believe it was the chief who had instructed Officer Feehan in this manner. So just so I understand, the defendant raised the CBA in the original case, and that's what stopped the investigation. But after the acquittal, the case was concluded, there was no further objection by the defendant to assert the collective bargaining agreement to stop the search of his computer? Your Honor, first, I can't – I don't believe the record is clear as to whether the defendant requested a pause in the investigation. It was interpreted by the police department that they could not proceed. That much is clear. Subsequently, I don't think there was any acquiescence on the part of defendants that the investigation could proceed. It was simply that the way the police department interpreted the agreement and the ruling, that then they could proceed, and they went ahead and did. And – I don't want to belabor this, but I – so in other words, the authority of the police department, some authority figure in the police department, decided that, okay, you've got the investigation going this far, we've charged the person, now we can't do anything else, and then trial happens, acquittal happens, and then they decide, well, now it's open season, we can go ahead. Yes, Your Honor. On the original warrant? Well, yes, on the original warrant. And including – it could have included – the formal investigation was also included the criminal sexual assault charge. Even that incident, even though the defendant had been convicted, it could have still resulted in a removal of defendant under the procedures of the formal investigation. And one thing to note, in addition about the fact that the warrant is clear that it involves separate incidents, is that defendant at this point now comes and says, well, there was insufficient probable cause, but defendant never contested the scope of the warrant at the appropriate time. And this was a finding made by the circuit court. The circuit court expressly found that the defendant made no challenge as to the scope of the warrant. So any argument that defendant now has about the probable cause, whether it was sufficient probable cause, comes far too late. And finally, to the second point, that the defendant raises the specter of a general search. This was not a general search by any stretch. Indeed, the officers kept returning to the courts to get another – further warrants whenever they found probable cause to believe that another crime had committed. They paused when they believed they were supposed to pause. And at each stage, they acted prudently and in an effort to satisfy the Fourth Amendment. And thus, the good-faith exception to the exclusionary rule should apply. The exclusionary rule is designed to deter future Fourth Amendment violations by excluding evidence when officers have acted deliberately or with reckless disregard or gross negligence. That's certainly not the case here where they endeavored time after time to obtain the acquittal. For and after the acquittal, yes, Your Honor, at all junctures. And so unless the Court has any further questions, we would ask this Court to reverse the judgment of the appellate court. Thank you, Mr. Munoz. Case number 125550, appeal to the State of Illinois v. John T. McAvett, known as Agenda Number 2, will be taken under advisement. Thank you, Mr. Malmey and Mr. Levin, for your oral arguments this morning.